UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:20-cv-22150-MGC

PRESTO DRY CLEANERS, INC.,

*Plaintiff,*

v.

STARR INDEMNITY & LIABILITY
COMPANY,

*Defendant.*
_____/

**DEFENDANT STARR INDEMNITY & LIABILITY COMPANY'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS TESTIMONY**

Defendant, Starr Indemnity & Liability Company ("Starr" or "Defendant"), by and through its undersigned counsel files this Reply in Support of its Motion for entry of an Order excluding the opinion testimony of Jorge Aucar ("Aucar"), an expert designated by Plaintiff Presto Dry Cleaners, Inc. ("Presto" or "Plaintiff").

**INTRODUCTION**

Presto cannot overcome Aucar's explicit testimony establishing the unreliability and irrelevance of Aucar's actual cash value ("ACV") and replacement cost estimates. Presto does not defend Aucar's Business Interruption estimate and concedes that Aucar may not testify regarding Business Interruption costs.[1] Presto's admission underscores the problem with Aucar's ACV estimate, because **the ACV estimate includes** Aucar's admittedly inadmissible Business Interruption estimate. Further, Presto's reference to a field adjuster's estimate shows the information that Aucar could and should have included in his estimate. The field adjuster

---

[1] Given Presto's admission, Starr will not separately address Aucar's Business Interruption estimate in this reply brief.

1

separately itemized depreciation and ACV in every item of his estimate and used a price list from September 2017 (the date of loss).  Presto's response does not explain why Aucar failed to itemize depreciation and the ACV estimate.  Nor does Presto's response explain Aucar's use of a price list from April 2019, a completely arbitrary date.  Presto cannot explain away these issues because Aucar's testimony unequivocally shows Aucar created the ACV and replacement cost estimates using haphazard and inexplicable methods.  Accordingly, Starr requests that the Court strike all reference to and testimony regarding Aucar's ACV and replacement cost estimates.

## ARGUMENT

I. **Aucar's ACV estimate is unreliable and irrelevant because Aucar does not know which items are included in the estimate.**

Starr does not dispute the propriety of using Xactimate software to create estimates.  Starr seeks Aucar's disqualification because Aucar does not understand how to use the Xactimate program.  Aucar's failure to properly use Xactimate makes his ACV estimate unreliable, irrelevant, and inadmissible.  Aucar's ACV estimate consists of an unexplained line item labeled "ACV Total," which lists the same total as Aucar's replacement cost estimate and provides no information regarding what items are or aren't included in the "ACV Total."  Doc. 39, Ex. A at Starr_000436.  For instance, the ACV Total seems to include $36,000 for "Business Interruption."  Doc. 39, Ex. A at Starr_000430.  Presto's response admits, however, Aucar is unqualified to testify regarding Business Interruption costs and states Aucar will not present testimony regarding these damages.  Doc. 41, pg. 9.  But this amount remains part of Aucar's "ACV Total."  Doc. 39, Ex. A at Starr_000436.  Aucar's failure to explain his estimate or identify the items included in the "ACV Total" makes Aucar's testimony regarding that amount irrelevant and inadmissible.

Presto's reference to a field adjuster's estimate further demonstrates Aucar's unreliability. Doc. 41, Ex. A. Presto argues that the field adjuster's estimate, which does not subtract depreciation, validates Aucar's method.[2] But, unlike Aucar, the field adjuster included the "ACV" estimate for each line item, a sample of which is shown below:

| QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1.00 EA | 700.00 | 0.00 | 140.00 | 840.00 | (0.00) | 840.00 |

Doc. 41, Ex. A at Starr_000591. Aucar's estimate does not include the "Deprec." and "ACV" columns that the field adjuster included. Doc. 39, Ex. A at Starr_000424. The absence of these columns prevents Starr and the jury from understanding what parts of Aucar's estimate, such as the Business Interruption costs Presto admits are inadmissible, are included in the "ACV Total."

When asked about this deficiency during his deposition, Aucar testified that "Xactimate, in this version, this is an old version. I think this is, if I remember, 27.5. I don't think it gave me a breakdown of it." Doc. 39, Ex. B at 31:18-32:2. The field adjuster's version of Xactimate, however, is presumably older than the version Aucar used—the field adjuster used market data from September 2017 and entered on October 19, 2017. Doc. 41, Ex. A at Starr_000590. Aucar used market data from April 2019 (nearly two years after the field adjuster's estimate), yet claims his software was too old to itemize depreciation and ACV. Doc. 39, Ex. B at 43:20-44:7. Aucar could have used the same "version" of Xactimate as the field adjuster and included a description of the "Deprec." and "ACV" applicable to each item in his estimate. Aucar's failure to include this information precludes Starr and the jury from identifying how Aucar created the "ACV Total" in his estimate and makes the estimate unreliable, irrelevant, and inadmissible.

---

[2] Presto's comparison is also irrelevant because the field adjuster is not a designated expert and is not subject to the Federal Rules regarding expert witness testimony, which apply to Aucar. Further, Presto bears the burden to establish the admissibility of its expert testimony and its damages, not Starr or the field adjuster.

Nor could Aucar explain during his deposition how he created this "ACV Total." Aucar's ACV estimate is inadmissible because he does not know why it duplicates the replacement cost estimate, stating that he "guesses" that Xactimate created the duplicative numbers and that he does not know which items were or weren't included in the ACV Total. Doc. 39, Ex. B at 31:18-32:2; 35:21-37:5; 49:13-21. Further, the field adjuster's estimate includes 16 items, while Aucar's estimate includes 151 items. Doc. 41, Ex. A at Starr_000591; Ex. B at Starr_000424-433. To the extent that Presto relies on the authority of the field adjuster's estimate, the field adjuster determined that almost everything included in Aucar's estimate **suffered no damage**. *Id*.

Lastly, even if the Court overlooks the above discrepancies, Aucar's "ACV Total" relies on irrelevant data from April 2019, as further explained below. Doc. 39, Ex. B at 43:20-44:7. The field adjuster's estimate used the appropriate pricing data from September 2017. Doc. 41, Ex. A at Starr_000590. Aucar's April 2019 data is unrelated to any event in this case. Because Aucar's ACV estimate is unreliable and irrelevant, Starr asks the Court to strike all testimony from Aucar regarding the ACV estimate.

**II.     Aucar's replacement cost estimate is unreliable and irrelevant because it uses data from April 2019—a date unrelated to the loss or any alleged breach.**

Presto's response argues that the Court should allow Aucar to testify regarding his replacement cost value estimate because Presto's damages are measured from the date of Starr's alleged breach, rather than the date of loss. Doc. 41, pg. 8. Presto then asserts that Starr breached the Policy in January 2020 after Aucar submitted his estimate and Starr failed to pay. *Id*. But Aucar's estimate did not use data from January 2020. Aucar's estimate used data from **April 2019**, a time unrelated to the date of loss or even the date Presto alleges that Starr breached the Policy. Doc. 39, Ex. B at 43:20-44:7.

60630832;1

Starr disagrees that it breached the Policy in January 2020 or that damages are measured from that date.  *See e.g., Carye v. Boca Raton Hotel and Club Ltd. Partnership*, 676 So. 2d 1020, 1021 (Fla. 4th DCA 1996); *Sarasota Yacht & Ship v. Harris*, 813 So. 2d 231, 232 (Fla. 2nd DCA 2002) ("The proper measure of damages for loss of personal property is its market value on the date of the loss").  However, even accepting Presto's argument that damages are measured from the alleged breach in January 2020, Presto fails to explain why Aucar's estimate used April 2019 data.  Doc. 41, pg. 8.  Presto failed to explain Aucar's use of April 2019 data because there is no cognizable explanation.  Doc. 39, Ex. B at 28:25-29:11.  In fact, Aucar **denied** creating his estimate in January 2020, stating that he printed the estimate in January 2020, but doesn't recall when he created the estimate.  *Id*.  Like Aucar's ACV estimate, Aucar simply does not know how or why he created his replacement cost estimate.

Aucar's testimony regarding replacement cost value is inadmissible because it can only serve to confuse the jury and prejudice Starr.  Starr asks the Court to strike Aucar's testimony regarding replacement cost value because the data Aucar relied on is irrelevant and the replacement cost estimate is unreliable.

**III.   Aucar's testimony demonstrates his lack of qualification to use and opine on Xactimate valuation software.**

Starr seeks only to exclude Aucar's testimony regarding the ACV and replacement cost estimates that Aucar created, based on Aucar's testimony that demonstrates his lack of expertise. Starr did not ask the Court to exclude Aucar's testimony entirely, stating that "Starr does not object to Aucar's testimony regarding the physical conditions of the Property that Aucar observed following Hurricane Irma." Doc. 39, pg. 4, f.2.

Presto's response relies on case law generally holding that insurance adjusters are qualified to testify regarding property damage and denying motions to strike such witnesses based on the

adjuster's lack of construction certifications. Doc. 41, pg. 4. None of Presto's citations address the circumstances here, where Aucar stated that he did not understand how or when he created his estimates and offered only "guesses" as to how the Xactimate software works.

Presto offers Aucar's public insurance adjuster license as qualification for his valuations, but neither Presto nor Aucar could explain Aucar's background or training in using the Xactimate software. Doc. 41, pg. 3-4. Aucar repeatedly demonstrated that he does not understand the basic functions of the Xactimate software, in claiming that he could not itemize depreciation and ACV (which the field adjuster did) and "guessing" as to how the software worked. Doc. 39, Ex. B at 31:18-32:2; 49:13-21.

Presto, not Starr, bears the burden to demonstrate Aucar's qualifications, which are plainly lacking. *Arch Specialty Ins. Co. v. BP Investment Partners, LLC,* No: 6:18-cv-1149-Orl-78DCI, 2020 WL 5848317, at *5 (M.D. Fla. Oct. 1, 2020) (citation omitted) ("The party offering the expert witness must lay the foundation for the testimony's admissibility and satisfy admissibility requirements by a preponderance of the evidence."). Presto's response provides no substantive information to support Aucar's qualifications and does not cure Aucar's evident lack of understanding of Xactimate's basic functions. Accordingly, Starr requests that the Court order that Aucar is unqualified to testify regarding his ACV and replacement cost estimates and preclude such testimony at trial.

## **CONCLUSION**

WHEREFORE, Defendant, Starr Indemnity and Liability Company, respectfully requests that this Court preclude Aucar's testimony regarding the Presto Estimate and exclude the Presto

Estimate in its entirety, and grant such further relief as this Court finds appropriate under the circumstances.

    Respectfully submitted,

**AKERMAN LLP**
By: */s/ Jason L. Margolin*
Jason L. Margolin, Esq.
Florida Bar No. 69881
401 E. Jackson St., STE 1700
Tampa, FL 33602
Telephone:  (813) 209-5009
Emails:  Jason.margolin@akerman.com
Judy.mcarthur@akerman.com

and

**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Elliot Strader, Esq. (*admitted pro hac vice*)
Texas Bar No. 24063966
Emails:  Elliot.strader@akerman.com
abbie.holzmeister@akerman.com
Weston Davis, Esq. (admitted *pro hac vice*)
Texas Bar No. 24065126
Emails:  weston.davis@akerman.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the foregoing was served via the ePortal on November 1, 2021 to Michael A. Nuzzo, Esq.**,** e-mail: servicenuzzopa@gmail.com and Jorge C. Borron, e-mail: jorgecborron@gmail.com.

    */s/ Jason L. Margolin*
    Attorney